IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DANIEL SEIGHMAN,

                              Plaintiff,

          v.

WACHOVIA BANK, N.A.,

                              Defendant          Civil Action Number 3:08CV435
                    /Third Party Plaintiff,

          v.

EXECUTIVE SECURITY, INC.

                    Third Party Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Wachovia Bank's Motion for Summary Judgment, Costs, and Attorneys' Fees.  (Docket No. 7).  For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.  Additionally, Wachovia Bank has seven (7) days from the entry of this Opinion and Order to brief the issue of costs and fees, followed by seven (7) days for Plaintiff Seighman to reply.

## I.  BACKGROUND

Plaintiff Daniel Seighman was a personal and business banking customer of Wachovia Bank, N.A. ("Wachovia").  On December 4, 2007, he deposited two checks into his personal banking account, and one check into a commercial account.  The total amount deposited was $193,220.19.  All three checks were drawn on the Wachovia

1

commercial account of Executive Security, Inc. ("Executive Security").  In this transaction, Wachovia Bank operated as both the depository bank and the payor bank.

On December 6, 2007, Edward Whalen, IV, the President of Executive Security, contacted Donna Smith, a Service Transaction Specialist at Wachovia, and notified her of unauthorized activity on Executive Security's account.  Three unauthorized checks were written from Executive Security's account and deposited into Mr. Seighman's accounts.  Mr. Whalen stated that the checks where signed using a signature stamp, and whoever used the stamp did so without authority.  In support of their contention that the checks were fraudulent, Executive Security submitted Affidavits of Forgery to Wachovia.  After being notified of the forgery, Wachovia debited Mr. Seighman's accounts in the amount of $193,220.19, the full amount of the three checks.

On June 19, 2008, Seighman filed a complaint in the Circuit Court of Spotsylvania County, Virginia, alleging that Wachovia's reversal of the three deposits was a wrongful charge-back, wrongful revocation of the deposits, and constituted conversion of Seighman's money.  Further, Seighman contends that he was charged $106.00 in overdraft and stop payment fees as a result of this conversion.  Plaintiff therefore seeks judgment in the amount of $193,326.19.

On July 10, 2008, the Defendant removed the case from state court to this Court based on diversity jurisdiction.  On July 14, 2008, Wachovia answered Plaintiff's Complaint and asserted that the checks deposited into Mr. Seighman's accounts were unauthorized, not properly payable, and therefore, according to the Deposit Agreements on file, Wachovia was permitted to debit the Plaintiff's accounts in the full amount of the checks.  Further, Wachovia asserts that the Plaintiff's claim is barred under four

theories: (1) by the doctrine of unclean hands; (2) by his participation in the fraudulent issuance of the checks; (3) by the terms governing the account into which he deposited the checks; and (4) by his breach of warranty.  In addition to its Answer, on July 15, 2008, Wachovia, pursuant to Fed. R. Civ. P. 14, filed a third party complaint seeking Executive Security to indemnify Wachovia from any loss they may suffer if the Court finds them liable to Seighman.

Subsequently, on July 25, 2008, Wachovia filed a Motion for Summary Judgment premised solely on their theory that the terms of the Personal and Commercial Banking Deposit Agreements governing Plaintiff's accounts bars Seighman's recovery. Specifically, Wachovia contends that Section I.D.5 of the "Deposit Agreements and Disclosures for Personal Accounts" ("Section I.D.5") governs, and allows Wachovia to charge back or debit its customer's account if a claim is made that an unauthorized check was deposited.  In response, the Plaintiff concedes that the Deposit Agreements control, but disputes that Section I.D.5 is applicable.  Rather, the Plaintiff claims that Section I.D.26 of the "Deposit Agreements and Disclosures for Personal Accounts" ("Section I.D.26") applies and provides the exclusive remedy, namely that when there is a dispute the account should be frozen until the claim is resolved or the bank interpleads the funds to the court.  Because either provision is dispositive of this case, the only issue before the Court is which provision controls.[1]

_____

[1] The agreement governing the Collection of Items can be found in Section I.D.5. of the "Deposit Agreement and Disclosures for Personal Accounts," as well as in Section I.4. of the "Deposit Agreement for Commercial Accounts."  For clarity's sake, it is identified as "Section I.D.5."  Similarly, the agreement governing Conflicts/Disputes Involving the Account can be found in Section I.D.26. of the "Deposit Agreement and Disclosures for Personal Accounts," as well as Section I.40 of the "Deposit Agreement for Commercial

## II.  STANDARD OF REVIEW

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

## III.  ANALYSIS

### A.    Applicable Section of the Deposit Agreements

Title 8.4 of the Virginia Code establishes the rights and duties between banks and their customers with regard to deposits and collections. Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 104 (2001). The effect of these provisions may be varied by agreement or contract of the parties. Va. Code. §8.4–103(a). In interpreting a parties' contract, all provisions must be given effect, and no provision can be ignored. Dominion

---

Accounts," but is identified as "Section I.D.26" herein.

Savings Bank v. Costello, 257 Va. 413, 417 (1999) ("No word or clause in the contract [should] be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly."); FS Photo, Inc. v. Picturevision, Inc., 61 F. Supp. 2d 473, 482 (E.D. Va. 1999) ("Courts interpreting a contract must read the contract as a single document and give meaning to every clause where possible.").  Where there is a repugnancy, a general provision in a contract must give way to a special provision covering the same ground.  Bott v. N. Snellenburg & Co., Inc., 177 Va. 331, 375 (1941).

In the present case, both Mr. Seighman and Wachovia agree that the provisions of the Virgina Code governing banking relationships was altered by agreement in the form of two Wachovia Deposit Agreements, one for personal accounts and the other for commercial accounts.  (Def.'s Mot. Summ. J. 2; Pl.'s Reply Br. to Mot. Summ. J. 1.) Further, both parties agree that Wachovia's "Deposit Agreement and Disclosures for Commercial Accounts" and the "Deposit Agreement and Disclosures for Personal Accounts," effective October 12, 2007, are applicable.  (Id.)  The only disputed issue in this case is which provision of the Deposit Agreements govern.  The challenged provisions are applicable to both personal and commercial accounts.  The provisions at issue, in pertinent part, are as follows:

> **Section I.D.5.**:
> **Collection of Items**
> If any check or other item deposited in your account is returned to us by the bank on which it was drawn through the Federal Reserve, a clearing house, or other normal check return channels, we may accept that return and charge the check or other item back against your account without regard to whether the bank on which the check was drawn returned the check before its midnight deadline.  Furthermore, if, after a check or other item deposited into your account is fully paid, it is returned to us by the

bank on which it is drawn because someone has made a claim that the check or other item was altered, forged, unauthorized, or should not have been paid for some other reason, we may debit your account for the amount of the item.

**Section I.D.26.**
**Conflicts/Disputes Involving the Account**
If we receive a [sic] actual or potential claim from a third party regarding your account, any deposit, transfer, credit, or other transaction involving your account, or conflicting instructions or claims from authorized signers, you hereby grant to us full discretion to freeze your account and not honor any further transactions until the claim is resolved, or we may, at our discretion, choose to rely on the current account documentation, honor the competing claim if we receive evidence supporting the claim, or refuse to pay out any money from your account until we receive consistent instructions from all parties or a court order, all without any liability to you.  We may also without liability to you close the account and issue a check made payable to you, to you and each authorized signer, or you and each claimant, as we deem necessary, or interplead the funds into court.

The Plaintiff argues that Section I.D.26. is the operative provision of the Deposit Agreements, rather than Section I.D.5., because: (1) Section I.D.26. addresses conflicts and disputes and provides that "when there is a claim the account is frozen until the claim is resolved, or the bank interpleads the funds to the court;" and (2) though Section I.D.5. addresses the current dispute, it violates Code of Va. § 8.4–103(a), which prohibits banks from using agreements to make "manifestly unreasonable" changes in the standards under which they operate.  (Pl.'s Reply Br. to Mot. Summ. J. 2.)  The Plaintiff further contends that Section I.D.5., which allows Wachovia the right to charge back or debit a customer's account when a claim is made, " gives no time frame in which this can be done . . . [and therefore,] this power given [to] Wachovia is manifestly unreasonable."  (Pl.'s Reply Br. to Mot. Summ. J. 2–3.)  Finally, the Plaintiff argues that "unlike [Section] I.D.26., Section I.D.5. fails to provide any protection to the customer if

6

the claim should be proven false;" a result that Plaintiff further argues is manifestly unreasonable.

In defense of their actions and in support of their contentions that Section I.D.5 controls, Wachovia states that the principles of contract construction clearly determine which provision is applicable.  Specifically, Section I.D.26 is permissive and does not bind Wachovia to a specific course of action; and that Section I.D.5. should control as its terms are specific to this issue, rather than general, as is Section I.D.26.  This Court agrees.

Plaintiff's reading of the Agreement, in its entirety, is in error.  *First*, this Court holds that Section I.D.26.'s language is clearly permissive and not exclusive; rather, Section I.D. 26. merely lists the options Wachovia has available to resolve actual or potential claims on a customer's account.  This Section plainly states that:

> [Wachovia has] *full discretion* to freeze your account and not honor any further transactions until the claim is resolved, *or we may, at our discretion*, choose to rely on the current account documentation, honor the competing claim if we receive evidence supporting the claim, *or* refuse to pay out any money from your account until we receive consistent instructions from all parties or a court order, all without any liability to you. . . .  We *may* also without liability to you close the account and issue a check made payable to you, to you and each authorized signer, or you and each claimant, *as we deem necessary*, or interplead the funds into court. (Emphasis added).

This permissive language, contrary to Plaintiff's interpretation, does not provide that freezing the account or interpleading the funds to the Court is Wachovia's exclusive remedy, but gives general guidance as to how Wachovia *may* handle actual or potential claims of third parties.  *Second*, the Court notes that Plaintiff's interpretation would have the Court completely disregard Section I.D.5., which Plaintiff has previously

7

admitted relates to the dispute.  (See Pl.'s Reply Br. to Mot. Summ. J. 2. (noting that "Paragraph D5 does state in part the language in item 9 [the only item in Defendant's Motion for Summary Judgment that is in dispute]").)  The Court cannot arbitrarily choose to ignore any provision of the contract, especially not one that specifically addresses this dispute.  Compare Section I.D.26. (governing "actual or potential claims from a third party regarding your account"), with Section I.D.5. (governing claims that an altered, forged, or unauthorized check was deposited and paid into a customer's account).  *Third*, assuming arguendo that Section I.D. 26 governs, this provision allows Wachovia to "honor the competing claim if evidence supporting the claim is submitted." Since both parties agree that Wachovia received affidavits from Executive Security stating that the checks were forged, even under Plaintiff's proffered provision Wachovia lawfully debited Mr. Seighman's account for the amount of the three checks.  (Def.'s Mot. Summ. J. 2; Pl.'s Reply Br. to Mot. Summ. J. 1.)

*Finally*, the Court holds that the "manifestly unreasonable test" that the Plaintiff contends invalidates Section I.D.5. is not applicable here, as this test is used to "determin[e] the validity of an agreement that sets the standards by which a bank's responsibility for its lack of good faith or failure to exercise ordinary care is to be measured."  Nat'l Title Ins. Corp. Agency v. First Union Nat'l Bank, 263 Va. 355, 363 (2002); see also Va. Code. § 8.4-103(a) (prohibiting parties from agreeing to disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care, but allowing parties to contractually determine the standards by which the bank's responsibility is to be measured, if those standards are not "manifestly unreasonable"). As the provisions in the Deposit Agreements at issue do not modify the standards by

which Wachovia's lack of good faith or failure to exercise ordinary care is measured, but rather enumerates what action can be taken when an unauthorized check is deposited into an account, the "manifestly unreasonable test" is inapplicable.   Though the Court need not go any further, it simply notes that the absence of a specified length of time within which to lawfully debit a customer's account, and Plaintiff's erroneous belief that the granting of summary judgment in this matter would forestall any other recourse available to Mr. Seighman–such as recovering the funds from Executive on the underlying debt if the checks were, in fact, authorized–does not meet the standard of "manifestly unreasonable."   Further, Plaintiff's do not contend that Section I.D.26 is manifestly unreasonable and, as noted above, under this Section Wachovia's actions were both lawful and agreed upon by the parties' written agreement.

Therefore, in reviewing the Deposit Agreements as a whole, and taking into account the specific terms of Section I.D.5 versus the permissive language and general nature of Section I.D.26, this Court holds that Section I.D.5. is the controlling provision that governs Wachovia's rights and obligations in this matter.   Accordingly, when Executive claimed that the checks Mr. Seighman deposited into his accounts were unauthorized, Wachovia was lawfully permitted to charge back or debit Mr. Seighman's account for the full value of the checks.   Therefore, Mr. Seighman's claim that Wachovia's conduct was unlawful and constituted conversion fails as a matter of law.

### B.    Attorney Costs and Fees

This Court declines to decide on Defendant's request for costs and attorney's fees prior to the parties' briefing of this issue.   As such, Wachovia Bank has seven (7) days

from the entry of this Opinion and Order to brief the issue of costs and fees, followed by

seven (7) days for Plaintiff Seighman to reply.

## IV.  CONCLUSION

For the reasons stated above, this Court GRANTS Wachovia's Motion for

Summary Judgment, and instructs the parties to brief the issue of costs and fees within

seven (7) days.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this ___6th___ day of October 2008

10